[No. 7177.  Decided July 11, 1908.]

MAX GARRETSON, *by his Guardian etc., Respondent*, v.
TACOMA RAILWAY & POWER COMPANY, *Appellant*.[1]

ELECTRICITY—ACTIONS FOR INJURIES — SHOP — EVIDENCE — SUFFICIENCY. There is sufficient evidence that a street car company's trolley wire carried an electric current, and that it was the source of a shock to the plaintiff, where it appears that the company was operating street cars in the city by electricity conveyed to the cars by trolley, that wires without insulation connected the trolley with a lamp wire handled by the plaintiff at a certain street corner, and that plaintiff received an electric shock while handling the lamp wire, shortly after a trolley car had passed that point, although there was conjectural evidence that the shock may have come from some other source.

TRIAL—QUESTIONS FOR JURY. The preponderance of conflicting evidence is a question for the jury.

[1]Reported in 96 Pac. 511.

ELECTRICITY—NEGLIGENCE—EVIDENCE—SUFFICIENCY. A street car company is liable to a city employee, a lamp trimmer, for injuries caused by the fact that its guy wire had been negligently changed by city employees from the company's pole to a city pole, making the trimmer's work dangerous, where, after such change, the company took down the wire and replaced it in the same situation without proper insulation.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 16, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an electric light trimmer through defective insulation of electric wires. Affirmed.

*Fitch & Jacobs*, for appellant.

*A. H. Garretson* and *R. S. Holt*, for respondent.

FULLERTON, J.—The appellant maintains and operates an electric railway in the city of Tacoma. The city of Tacoma owns and operates an electric lighting plant, and maintains electric lights at points along the streets over which the appellant operates its railway. The respondent, Max Garretson, was in the employ of the city in the capacity of an electric light trimmer, and was injured while in the performance of his duties by an electric current which he alleged came from the trolley wire of the appellant's railway, the fastenings and insulators to which had been negligently suffered to become and remain out of repair. The situs of the accident was at a curve in the railway track, and to maintain the trolley wire over the center of the track at that place, a somewhat complicated, although common, arrangement of wires was resorted to. The several trolley supports or hangers were fastened to heavy guard wires, placed one on each side of the trolley and parallel therewith, to which guy wires were attached and carried back and fastened to poles erected along the side of the street. The guard wire on the convex side of the trolley curve was fastened to the eyes of the hangers, a distance of some $2\frac{1}{4}$ inches from the trolley wire.

As originally constructed, the guy wires holding the trolley at this point were fastened to the appellant's own poles, and contained insulators preventing any escaping electric current from reaching the ground by way of the poles, but it appears that the city's employees, for reasons not stated in the record, something over a year prior to the accident, had removed the wire from the appellant's pole to one belonging to the city, and that afterwards the appellant's employees took down and again replaced the trolley, refastening the guy wire to the same pole. In one of these changes, the insulator was removed. The city's lamp was supported by wires attached to this pole, and was so arranged that the trimmer could raise and lower the lamp by means of a flexible wire which passed through a pully near the top of the pole and then extended downward to within his reach from the ground. The guy wire, by being fastened to the city's pole, was brought in direct contact with the wire the respondent was obliged to handle in trimming the electric lamp, and he received the shock which caused his injury when he took hold of the flexible wire above mentioned for the purpose of lowering the lamp so that it could be trimmed from his position on the ground. It was the respondent's contention that the guard wire placed parallel with the trolley wire had become bent so that it touched the trolley wire, thus receiving the current and communicating the same to the guy wire, which in turn communicated it to the wire which the respondent was required in the course of his duty to handle. At the trial the jury returned a verdict in favor of the respondent for the sum of $500, and for this sum judgment was entered in his favor. The railway company appeals.

The appellant has reduced its assignments of error to four principal contentions, the first of which is that there is no evidence which shows, or tends to show, that the trolley wire of the appellant company was charged with electricity, or carried an electric current at the time of the accident. In brief the proofs on this point were these: (1) the admission in the

answer of the appellant to the effect that it was operating a line of street cars in the city of Tacoma by the force of electricity, conveyed to the cars by trolley wires; (2) that a car of the company passed the point of the accident just prior to the happening of the accident; (3) that the guard wire supporting the trolley wire had become bent so that it touched the trolley wire; (4) that the guard wire connected with the guy wire which was without insulation, and which was fastened to a pole on which was suspended a wire connected with an electric lamp; and (5) that the respondent received an electric shock when he took hold of the lamp wire. This, it seems to us, is evidence tending to prove the point. The presence of an electric current is usually determined by the phenomena its presence produces, and here all of the phenomena pointed to that end. There was a connection with a wire along which an electric current was usually carried, and a resultant shock. This is evidence of the presence of a current of electricity in the wire.

The second contention is that there is no evidence establishing with certainty the source from which the current causing the shock came; that the proofs show that it is just as probable that it came from the city's electric light wire as it is that it came from the wires of the appellant company. But we cannot so view the record. As we have shown, there was evidence showing a direct connection between the wire from which the shock was received and the appellant's trolley wire which carried a current of electricity. The evidence that it might have come from another source was merely conjectural; the witnesses stating, when the direct question was asked them, that it was possible that the current could have come from another source than the appellant's wires. But this does not necessitate the holding that there was a failure of proof as a matter of law. The respondent was not required to establish his case beyond a reasonable doubt. As in all human affairs there is an element of uncertainty, the law must deal with conditions in a practical way, and it demands only

reasonable certainty as the basis of a civil claim; that degree of certainty which reasonable men will rely upon when dealing with the ordinary affairs of life. There was at least this degree of certainty in the evidence in the case before us.

The third contention is that the proofs failed to show that the appellant's injuries were caused by the electric shock he received. But on this point the most that can be said is that the evidence is conflicting. In such a case its preponderance is for the jury.

Lastly, it is contended that there is no evidence of negligence on the part of the appellant. It is thought that since the city's employees first removed the wire from the company's pole to the pole of the city, there is no liability on the part of the company to answer for any injury done to an employee of the city by reason of such change. But such is not the rule. The company owed to every one the duty of keeping its wires in a reasonable state of repair, and if it discovered, or by reasonable diligence might have discovered, that this guy wire made the duties of the light trimmer hazardous or dangerous, it was its duty to correct the fault, and it is of course responsible for the neglect of that duty. That it did know, or ought to have known of its dangerous condition, the record abundantly shows—in fact it took the wire down and replaced it long after the time the city made the original removal. It may be that it did not know of the bent condition of the guard wire in time to repair it before the accident, but this is not material. This was a condition it ought to have anticipated and so insulated the guy wires as to prevent the circuit from escaping even should the guard wire touch the trolley wire.

As we view the record, the evidence justified the verdict, and the judgment entered thereon should be affirmed. It is so ordered.

HADLEY, C. J., RUDKIN, MOUNT, ROOT, DUNBAR, and CROW, JJ., concur.